# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ADA Q. LAMPKIN,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | **No. 1:25-CV-1297-ADA-SH** |
| H-E-B, L.P. and DAVID YOUNG,<br>*Defendants* | §<br>§<br>§<br>§ | |

### ORDER AND REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**

Now before the Court are:

- Plaintiff's Petition in Equity and Demand for Intervention for the Court of Record in Equity Only, filed October 20, 2025 (Dkt. 13);

- Defendants' Motion to Compel Arbitration, filed November 5, 2025 (Dkt. 18);

- Plaintiff's Emergency Petition in Equity, filed November 8, 2025 (Dkt. 21);

- Plaintiff's Objection, Notice, Return for Cause, Motion to Strike Defendants' Filing, and Notice of Non-Consent to Magistrate Jurisdiction, filed November 17, 2025 (Dkt. 25);

- Plaintiff's Motion for Leave to File First Amended Complaint, filed February 2, 2026 (Dkt. 38);

and the associated response and reply briefs.[1] On March 2, 2026, the Court held an Initial Pretrial Conference and hearing on the motions and at which Plaintiff appeared *pro se* and Defendants appeared through counsel.

---

[1] The District Court referred to this Magistrate Judge all non-dispositive pretrial matters for disposition and all case-dispositive motions for findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"), and Judge Alan D Albright's Standing Order on referrals to United States Magistrate Judges. Dkt. 4.

## I.    Background

Plaintiff Ada Q. Lampkin brings this employment discrimination suit against her former employer, H-E-B Grocery Company, L.P. ("H-E-B"), and David Young, her former manager. Complaint, Dkt. 1; First Amended Complaint, Dkt. 38-1 at 1.

Lampkin alleges that she worked for H-E-B for ten years before she was terminated in July 2025 after she was "involved in a workplace interaction with a co-worker . . . which management later used as a pretext to terminate her employment." Complaint, Dkt. 1 ¶¶ 7, 9. Lampkin alleges that she was the only black employee in her department and that she observed and experienced disparate treatment based on race. *Id.* ¶ 8. In her original complaint, Lampkin asserted claims for race discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981 and Texas common law; wrongful termination in violation of public policy; and intentional infliction of emotional distress. *Id.* ¶¶ 14-22.

Defendants move to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4, arguing that all asserted claims are subject to a binding arbitration agreement. Lampkin opposes the motion and has filed numerous motions and petitions "in equity" asserting various sovereign citizen-type[2] arguments. Dkts. 13, 21, 25. She also seeks to amend her complaint to add employment discrimination claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA").

---

[2] "So-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). Courts routinely find such claims to be legally "frivolous and entirely without merit." *Hanlan v. United States Government*, No. SA-25-CV-00500-XR, 2025 WL 2673903, at *3 (W.D. Tex. Sept. 17, 2025).

## II.    Initial Pretrial Conference

H-E-B submitted a proposed scheduling order on November 17, 2025 (Dkt. 22), but could not obtain Lampkin's input. Dkt. 22 at 1. After the Court issued a second docket control order (Dkt. 31), H-E-B documented counsel's repeated efforts to confer with Lampkin (Dkt. 35). She refused to cooperate, stating, for example:

- I do not confer privately with Defendants.

- I do not negotiate dates for administrative scheduling.

- I do not collaborate on joint scheduling orders.

Dkt. 32 at 1.

During the initial pretrial conference, the Court admonished Lampkin of her duty to confer in good faith with counsel for H-E-B to cooperatively plan discovery and resolve disputes, and she represented that she would do so. The Court informed Lampkin that if she did not do so, this Magistrate Judge would recommend dismissal of her case for failure to prosecute and obey Court orders. The Court also **ORDERED** Lampkin to:

1. Make her Rule 26(f) disclosures to H-E-B by **Friday, March 6, 2026**;

2. Respond to counsel for H-E-B concerning their revised proposed joint scheduling order **within 24 hours** of receiving it; and

3. Cease filing motions that are frivolous or violate the conference requirement of Local Rule CV-7(g) or face a prefiling bar.

## III.    Plaintiff's Motion to Amend Complaint

Lampkin seeks leave under Rule 15(a) to file a first amended complaint to assert her race discrimination and retaliation claims under Title VII of the Civil Rights Act and a disability discrimination claim under the ADA. Dkt. 38. Although she failed to confer with Defendants before filing her motion, as required under Local Rule CV-7(g), they do not oppose amendment. Dkt. 39.

3

"Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,* 751 F.3d 368, 378 (5th Cir. 2014). The Court grants the motion to amend.

### IV.    Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") was enacted in 1925 as a response to "judicial hostility to arbitration" and provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting 9 U.S.C. § 2). The FAA establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The FAA applies to contracts 'evidencing a transaction involving commerce,' and employment contracts fall within that category." *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001)).

### A.  Legal Standards

Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, the court applies state law to determine whether "the parties entered into *any arbitration agreement at all*." *Id.* Second, the court interprets the agreement to determine whether the claims are covered by the arbitration agreement. *Id.* If the court finds that the parties agreed to arbitrate certain claims, the court typically "must consider whether any federal statute or policy renders the claims nonarbitrable." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

The party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate and that the claims fall within the agreement. *Huckaba v. Ref-Chem,*

4

*L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

The FAA directs:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue.

9 U.S.C. § 4. If a jury trial has not been demanded regarding the validity of the agreement, a district court may satisfy its duty under § 4 by holding an evidentiary hearing. *Will-Drill*, 352 F.3d at 215; *Dalon v. Ruleville Nursing & Rehab. Ctr., L.L.C.*, 161 F. Supp. 3d 406, 411 (N.D. Miss. 2016).

## B. Analysis

The Court begins with the threshold issue of whether the parties entered into any arbitration agreement at all. *Kubala*, 830 F.3d at 201. Although there is a strong federal policy favoring arbitration, this policy does not apply to the determination whether there is a valid agreement to arbitrate between the parties. *Will-Drill*, 352 F.3d at 214. In determining whether an agreement to arbitrate exists, courts apply "ordinary contract principles." *Id.*

### 1.  The Parties Entered Into an Arbitration Agreement

Texas contract law applies here. "Arbitration agreements between employers and their employees are broadly enforceable in Texas." *Kubala*, 830 F.3d at 202. The party moving to compel arbitration must show that the agreement meets all of the requisite contract elements. *Huckaba*, 892 F.3d at 688. Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Id.* at 689. "In construing a contract, a court must ascertain the true intentions

of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In identifying such intent, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

"An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006). When determining whether an employee received notice of a binding arbitration agreement, Texas law does "not confine that 'notice analysis' to the underlying agreement, but to all communications between the employer and employee." *Id.*

In support of its motion, H-E-B submit an arbitration agreement signed by Lampkin on January 18, 2024. Dkt. 18-3. The Arbitration Agreement provides in relevant part:

## AGREEMENT TO ARBITRATE

**Mutual Agreement to Arbitrate.** Except as provided below, H-E-B and I agree that all legal disputes, controversies, and claims between the parties shall be submitted to and resolved by final and binding arbitration to be administered by the American Arbitration Association (AAA) or other mutually agreed arbitrator pursuant to the AAA's Employment Arbitration Rules, as amended. Except as provided below, the claims subject to this Agreement include, without limitation, all claims pertaining to my application for employment, my employment and benefits (if hired), and the termination of employment. Specifically included are the following types of claims: discrimination, harassment, or retaliation; unpaid wages, overtime, benefits, bonuses, or other compensation; breach of any express or implied contract; violation of public policy; negligence or other tort claims such as defamation, fraud, and infliction of emotional distress; and violation of any federal, state, or local law, statute, regulation, or ordinance. Except as provided below, both H-E-B and I are voluntarily waiving all rights to trial in court before a judge or jury on all claims covered by this Agreement. Claims against H-E-B subject to this Agreement shall include claims against H-E-B's parent or subsidiary companies, related companies, brands, alleged agents, and alleged joint or co-employers, and their respective directors, officers, employees, and agents, whether current, former, or future. The parties agree and stipulate that this Agreement is covered and governed by the Federal Arbitration Act ("FAA") and that the parties are governed by and subject to the coverage of the FAA.

***

**Understanding of Agreement.** I have read and understand this Agreement and have been informed that I may consult with my own private attorney about it if I want to stop the application process and do so. . . .

**Acceptance of Agreement.** By checking the "Signature" box and clicking the "Submit" button (both below), I am agreeing to and accepting the terms of this Agreement to Arbitrate, as has H-E-B, and am waiving any right to a jury trial or to file a lawsuit in court for any claims subject to arbitration.

*Id.* at 3. The Arbitration Agreement contains a signature box stating: "By checking the 'Signature' box and clicking the "Submit' button (both below), I understand and agree to the Additional Agreements above." *Id.* at 4.

Lampkin's electronic signature appears in the signature box date and time stamped "1/18/2024 7:17 PM." *Id.* The agreement also states that "checking the checkbox above is equivalent to a handwritten signature." *Id.* The checkbox is also checked. The "E-Signature Disclosures & Consent" provision of the employment agreement further states: "You are also agreeing that your electronic signature is the equivalent of your handwritten (or wet) signature, with all the same legal and binding effect." *Id.* at 1.

H-E-B provides sworn testimony that the employment agreement submitted is a true and correct copy of the agreement Lampkin agreed to on January 18, 2024. Shaver Decl., Dkt. 18-1 ¶ 9. H-E-B also contends that once an applicant electronically signs and submits the job application, the applicant and H-E-B "cannot alter or edit the application documents." *Id.* ¶ 8. H-E-B explains that it requires all its employees to agree to arbitrate all employment related disputes as a condition of employment:

> As part of every job application, applicants are provided an Agreement to Arbitrate, General Agreement, E-Signature Disclosures & Consent Agreement, and Additional Agreements (collectively, the "Agreements"). The applicant must review and accept the Agreements before proceeding with the remainder of application. An applicant cannot complete the application or begin

7

employment at H-E-B unless she electronically signs the Agreements.

*Id.* ¶ 5.

"A signature, electronic or otherwise, is generally deemed to be sufficient to show assent to an arbitration agreement." *Alorica v. Tovar*, 569 S.W.3d 736, 740 (Tex. App.—El Paso 2018, no pet.). Texas has adopted the Uniform Electronic Transactions Act, which provides that electronic signatures may be used in contract formation. TEX. BUS. & COM. CODE § 322.009(a). That a plaintiff electronically signs an arbitration agreement "is not a valid defense to contract formation." *Leach v. HEB*, No. SA-23-CV-01428-XR, 2024 WL 150777, at *3 (W.D. Tex. Jan. 12, 2024).

In *Leach*, the court examined the same arbitration agreement as in this case and found that the plaintiff had entered into a valid arbitration agreement by providing her electronic signature and submitting her application to H-E-B online. *Id.*; *see also Flores v. HEB*, No. SA-23-CV-01430-JKP, 2024 WL 6049950, at *3 (W.D. Tex. Jan. 12, 2024) (finding that plaintiff entered into the same arbitration agreement with H-E-B by providing her electronic signature and submitting her application online).

Although her electronic signature appears below the Arbitration Agreement, Lampkin contends that she never signed the agreement and accuses H-E-B of forging her signature. To contest the authenticity of the Arbitration Agreement, Lampkin is required to ***both*** unequivocally deny that she agreed to arbitrate and produce "some evidence" supporting her position. *Yanez v. Dish Network, L.L.C.*, 140 F.4th 626, 630 (5th Cir. 2025). But Lampkin offers no evidence to support her position beyond her affidavit, which amounts "to nothing more than hollow, bald assertions that do not approach fraud in the 'making' of the Agreement." *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) (finding that plaintiffs' self-serving affidavit was insufficient to show that they did not enter into a valid arbitration agreement).

At the hearing, Lampkin argued that the 7:17 p.m. time stamp is evidence she never signed the agreement. Lampkin testified that she was working for H-E-B when she submitted the application on January 18, 2024, but she did not work nights then, so the time stamp "does not make sense to me." The Court observes that Lampkin could have submitted her online application after her regular work hours and finds that she offers no credible evidence that her signature was forged.

An employee also demonstrates acceptance of an arbitration agreement by "continuing to show up for the job and accept wages in return for work." *Kubala*, 830 F.3d at 203; *see also In re Dallas Peterbilt*, 196 S.W.3d at 163 ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law."). By continuing her employment with H-E-B after submitting her application, Lampkin assented to the terms of the Arbitration Agreement as a matter of law. *In re Dallas Peterbilt*, 196 S.W.3d at 163; *Leach*, 2024 WL 150777, at *3.

For these reasons, this Magistrate Judge finds that Defendants have sustained their burden to show that Lampkin entered into a valid arbitration agreement with H-E-B. The Court also finds that the arbitration agreement applies to Defendant Young under the intertwined claims estoppel doctrine. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022).

Having found that the parties entered into a valid arbitration agreement, the Court next considers whether Lampkin's claims fall within the arbitration agreement.

### 2. Plaintiff's Claims Are Arbitrable and Covered by the Arbitration Agreement

In her original complaint, Lampkin asserted claims of employment discrimination, retaliation, wrongful termination, and intentional infliction of emotional distress. Dkt. 1 ¶¶ 14-22. In her First Amended Complaint, she asserts race discrimination and retaliation claims under Title VII and a disability discrimination claim under the ADA. Dkt. 38-1. The Arbitration Agreement expressly

states that "all legal disputes" must be arbitrated, including claims of "discrimination, harassment, or retaliation" and violations of public policy. Dkt. 18-3 at 3.

Courts "resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration. Arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citation omitted). The Court finds that the Arbitration Agreement expressly covers Lampkin's claims. *Leach*, 2024 WL 150777, at *3; *Flores*, 2024 WL 6049950, at *3. The Court also finds that no federal statute or policy renders the claims nonarbitrable. *Will-Drill*, 352 F.3d at 214.

### 3.  Plaintiff Asserts No Reason the Arbitration Agreement is Unenforceable

Because H-E-B has met its initial burden to show the Arbitration Agreement is valid and Lampkin's claims fall within it, the burden shifts to her to assert a reason the agreement is unenforceable. *Carter*, 362 F.3d at 297. Lampkin argues the Arbitration Agreement should not be enforced because "arbitration is foreign to equity" and she "does not consent to statutory or private-contract jurisdiction." Dkt. 19 at 1, 3. These sovereign citizen-type arguments are not valid legal theories to void an arbitration agreement. *See, e.g.*, *United States v. Masat*, 948 F.2d 923, 934 (5th Cir. 1991) (rejecting as frivolous defendant's argument the court lacked personal jurisdiction over him because he was a "freeman"); *Haywood v. Texas Realator*, No. 3:22-CV-02174-K-BT, 2023 WL 5597346, at *3 (N.D. Tex. Aug. 7, 2023) (stating that sovereign citizen argument that loan contract was "null and void" was "not a valid legal theory to void any contract"), *R. & R. adopted*, 2023 WL 5604130 (N.D. Tex. Aug. 29, 2023); *Wirsche v. Bank of Am., N.A.*, No. 7:13-CV-528, 2013 WL 6564657, at *2 (S.D. Tex. Dec. 13, 2013) (stating that sovereign citizen arguments to void legal obligations "have never worked in a court of law—not a single time").

10

## C.    Conclusion as to Motion to Compel Arbitration

Because the parties entered into a valid Arbitration Agreement and that agreement covers the claims asserted, the parties must be compelled to arbitration. 9 U.S.C. § 4 ("The court shall . . . upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). In addition, this case must be stayed "until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3.

## V.    Plaintiff's Motions in Equity

Finally, Lampkin has filed motions and petitions "in equity" objecting to the Court's jurisdiction, Defendants' right to engage in discovery, and Defendants' evidence. Dkts. 13, 21, 25. As discussed above, such sovereign citizen theories are legally frivolous and must be dismissed.

## VI.    Order

This Magistrate Judge **DISMISSES** as frivolous Plaintiff's

> (1) Petition in Equity and Demand for Intervention for the Court of Record in Equity Only (Dkt. 13),
>
> (2) Emergency Petition in Equity (Dkt. 21), and
>
> (3) Objection, Notice, Return for Cause, Motion to Strike Defendants' Filing, and Notice of Non-Consent to Magistrate Jurisdiction (Dkt. 25).

The Court **GRANTS** Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. 38) and **ORDERS** the Clerk to file the First Amended Complaint (Dkt. 38-1).

## VII.    Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Compel Arbitration (Dkt. 18) and **STAY** this case pending resolution of arbitration proceedings.

11

## VIII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 3, 2026.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE